IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BEVERLY BARBER, | }<br>} |
| Plaintiff, | }<br>} |
| v. | }   CIVIL ACTION NO.<br>} |
| | }   99-AR-1060-M |
| D. MICHAEL BARRETT, *et al.*, | } |
| Defendants. | }<br>} |

ENTERED
OCT 25 2000

**<u>MEMORANDUM OPINION</u>**

The court has before it a blizzard of motions in the above-entitled case. All of the motions were set for hearing at this court's last regular motion docket on October 13, 2000. No party requested oral argument, and the motions were taken under advisement without oral argument.

The court is forestalled by the pending bankruptcy of defendant, D. Michael Barrett ("Barrett"), from addressing the viability of the action of plaintiff, Beverly Barber ("Barber"), insofar as it pursues claims against Barrett. Defendants, Steven Clyde Reed Brown, Glenn Floyd, The Law Firm of Floyd and Brandenburg, Robert McKim Norris, and The Law Firm of Norris and Associates, have all moved for summary judgment, seeking a dismissal of the action against them for several reasons, not the least of which is the bar of the applicable statutes of limitations. Simply stated, the complaint, as presently constituted, charges fraud by all defendants and a conspiratorial

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The statute of limitations applicable to all counts and claims, including the RICO claim, is the Alabama two year statute of limitations for fraud. Ala. Code §6-2-3; *Silverberg v. Thomson McKinnon Securities, Inc.*, 787 F.2d 1079 (6th Cir.1986); *Calabrese v. State Farm Mut. Auto Ins. Co.*, 789 F.Supp. 264 (N.D. Ill.1992); *Solano v. Delmed, Inc.*, 759 F.Supp. 847 (D.C.1991). The civil RICO limitations period is determined by the most nearly analogous state statute of limitations. The statute of limitations for the **criminal** prosecution of a RICO violation is five (5) years, but in Alabama the limitations period for a **civil** RICO action is the two year statute that acts as a bar for common law or statutory fraud. 18 U.S.C. §1963. Barber, who is *pro se*, does not seriously contend that the applicable statutes of limitation are any longer than two years. Instead, she relies upon concepts of delayed triggering and equitable tolling in her effort to avoid the bar.

In his earlier incarnation as a trial lawyer, this court learned that a person in Alabama claiming to have been defrauded must investigate and get to the courthouse with the claim within two years after the date upon which he, she or it should, by an exercise of reasonable diligence, have discovered the likelihood of fraud. In *First Federal Savings & Loan Ass'n of Miami v. Mortgage Corp. of the South*, 650 F.2d 1376 (5th Cir.1981), the old Fifth Circuit, from which the Eleventh Circuit sprang like Eve from

2

Adam's rib, not only confirmed this principle, but recognized the right of the trial judge, at the stage when the court is evaluating a fraud case under Rule 56, F.R.Civ.P., scrutiny, to sit in judgment on the undisputed facts that were available to the plaintiff in order to ascertain whether those facts should, as a matter of law, have put him, her or it upon sufficient inquiry to start the running of the two year statute of limitations.  First Federal, the plaintiff in that case, was first represented by Honorable Robert S. Vance as its lawyer before he was appointed to the Fifth Circuit bench.  The undersigned inherited that representation from Judge Vance when he left the law practice.  At that time the undersigned shared lawyer Vance's belief that the question of when a person, by the exercise of reasonable diligence, should have known enough to start the running of the fraud statute of limitations is a matter for jury determination.  Both lawyer Vance and the undersigned were wrong.  The undersigned now readily acknowledges that his and lawyer Vance's mutual client had enough information to have opened its eyes more than two years before it filed suit.  The undersigned can be forgiven, after 19 years, for saying that the Fifth Circuit was entirely correct when it affirmed the trial judge after he had granted summary judgment upon a finding of the existence of sufficient facts within First Federal's knowledge to have put it upon notice of possible fraud, and to have required it promptly to conduct any investigation it deemed

necessary before either filing suit or forever foregoing the right to file a suit.

After reciting the undisputed facts available to First Federal more than two years before it went to court, the Fifth Circuit said:

> This knowledge...should have prompted First Federal to make further inquiry.

650 F.2d at 1378.

In its concluding paragraph, the Fifth Circuit held:

> We agree with the district court's determination that, prior to December 22, 1973, First Federal possessed notice or knowledge that it had been defrauded and deceived which was sufficient to trigger the running of the two-year statute of limitations.

650 F.2d at 1379.

The lesson of *First Federal* is that there comes a time when things become so obvious that they cannot be ignored with impunity. Put another way, a fraud victim cannot turn a blind eye to glaring indicia of fraud and then ask forgiveness for not meeting the filing deadline.[1]

Barber endeavors to extricate herself from the bar of the statute of limitations by asserting the existence of facts which would toll the running of the statute. Besides characterizing the fraud as continuing, something lawyer Vance and the undersigned

---

[1] Fifth Circuit precedent prior to the creation of the Eleventh Circuit is, of course, binding on the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981).

4

unsuccessfully attempted in *First Federal,* she blames her failure to sue within two years after the actual commission of the fraud on the fact that a criminal investigation was ongoing and that its pendency lulled her into believing that something would be done in the criminal prosecutorial arena to make her whole. If anything, her unique contention in this regard is more hurtful to her than helpful. In any statute of limitations analysis, what Barber describes only tends to prove the magnitude and the obviousness of the alleged fraud, and of her own early comprehension of it. She placed herself on high alert when she went to the authorities with her problem.

This court can find no precedent that would give a defrauded person the right to rely on some "hoped-for" order of restitution as a part of some "hoped-for" sentence imposed on a defrauder after his "hoped-for" conviction as an excuse for not having timely resorted to available civil remedies. Although it would appear that Barber was very likely the target of a monumental scheme to defraud, there is no basis to excuse her not having timely obtained access to court.

The allegations in Barber's amended complaint, and the voluminous materials submitted in support of and in opposition to the pending motions for summary judgment, tell a story that boggles the mind. "Bizarre" is one word for it. How Barber could have fallen for the scheme ostensively employed by some, if not all, of

these defendants, is inconceivable. Barber has proven by her own competent *pro se* performance in court thus far that she is not incompetent. She is not dumb. She has a degree of sophistication that prevents her from asserting naivete as an explanation for her dilatory response to the alleged fraud, if naivete were a legal excuse, which it is not. While she pursued the defendants with dogged determination in her criminal investigatory role, she was surely bound to be aware, constructively if not actually, that the clock was ticking on any civil cause of action that arose from the same alleged misconduct. Her allegations, which are deemed true by this court for the purposes of this analysis, are so strange that this court will not attempt to describe them. Suffice it to say that they read like a dime novel. Not every fraud story includes an Arab sheik and an Oklahoma lawyer handling an Alabama municipal bond issue.

What Barber knew in 1997 makes what First Federal knew in 1973 pale to insignificance. If the plaintiff in *First Federal* was, as a matter of law, sufficiently alerted to the possibility of its victimhood to trigger the running of the statute of limitations, Barber was alerted here, as a matter of law. Whether or not, in point of actual fact, she was aware of the existence of actionable fraud or of a RICO violation, she knew or should have known enough to have headed to the courthouse much sooner. Because she did not avail herself of her civil law opportunity, she finds the courthouse

6

door closed to her.

Barber did not comply with the requirements of Rule 25(a), F.R.Civ.P., in order to accomplish the substitution of a personal representative for an originally named defendant, Robert Brandenburg, who, as appears from the record, is deceased. Being dead explains why he has not filed a motion for summary judgment. But, this court must *sua sponte* apply Rule 25(a) when the record provides a basis for its applicability. Plaintiff has abandoned any cause of action she may have had against Brandenburg. She apparently is still trying to pursue "the estate of Robert Brandenburg", but the court knows of no suable entity known as "the estate of Robert Brandenburg". Not only is any action by Barber against Brandenburg due to be dismissed under Rule 25(a), but such a claim is probably also barred by the Oklahoma statute of non-claims. Assuming, *arguendo*, that an estate for Brandenburg has been opened in Oklahoma, there is nothing to indicate that the requirements of Title 58 of Oklahoma Statutes, §§ 243, 331, and 333, have been complied with.

Larry D. Woods ("Woods") is the only remaining defendant, that is, not counting D. Michael Barrett, who is in bankruptcy. Because a statute of limitations defense can be waived, and Woods has not interposed such a defense, the case against Woods will be set for trial unless Barber requests a Rule 54(b) certification as allowed in the separate appropriate order.

DONE this 26th day of October 2000.

                                                    WILLIAM M. ACKER, JR.
                                                    UNITED STATES DISTRICT JUDGE